# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **LISA BERRY, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action Number: |
| ) | |
| **EQUIFAX INFORMATION** ) | |
| **SERVICES, LLC, a** ) | |
| **Corporation** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, in the above styled cause, and for her Complaint against the Defendant, Equifax Information Services, LLC, states as follows:

## PRELIMINARY STATEMENT

1.  This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to and upon Defendant's violations of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*. and for Common Law Defamation.

2.  Despite its obligation to follow procedures to assure the "maximum possible accuracy" of its credit reports and to thoroughly and substatntively investigate consumer disputes of inaccurate

information, Equifax chooses instead to defer all decisions as to what will be reported to its customers – creditors and data furnishers such as FIA Card Services f/d/b/a Bank of America credit card servicing arm, MBNA that buy reports and furnish credit histories. Defendant has long known this practice to be unlawful. It also fails to use reasonable and rigorous standards to match data to particular consumer files, often allowing one person's information to be mixed into another person's credit reports.

3. In the present case, Defendant received FIA Card Services f/d/b/a Bank of America (MBNA)[1] reporting of a credit card account and thereafter incorrectly attributed that account to the Plaintiff. It did so even after the Plaintiff had made multiple disputes to TransUnion and MBNA informing it of its inaccurate reporting.

## JURISDICTION

5. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p and 28 U.S.C. §1367. Venue is proper as the Plaintiff resides here, all relevant events occurred in this venue and Defendant operates in Alabama.

---

[1] This account is referred to as "MBNA" or "Bank of America".

## Parties

1. The Plaintiff, Lisa Berry ("Plaintiff" or "Berry"), is a natural person who is a resident citizen of Alabama. She is a "consumer" as defined by 15 U.S.C. §1681a(c).

2. Upon information and belief, Equifax Information Services, LLC. ("Equifax"), is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties. Its principal place of business is the State of Georgia and it is incorporated in Georgia.

3. Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## Factual Allegations

4. In December of 2005, Lisa Berry was turned down for a credit card with Discover. When she pulled her Trans Union credit report, she saw a Bank of America account which was past due.

5. This account was not and is not her account.

6. Plaintiff Berry disputed this numerous times with Trans Union from January 2006 to 2008.  Berry also disputed this directly with Bank of America numerous times.

7. In April 2008, Plaintiff obtained a copy of her Equifax credit report and learned that the Defendants were reporting derogatory information within her credit file regarding the erroneous account. ("MBNA reporting").

8. In June 2008, the Plaintiff sent a detailed dispute to Equifax explaining the same things that she had previously stated in her direct disputes to MBNA.

9. In the dispute, Plaintiff informed Equifax that the credit card account was incorrectly attributed to her and was not her account.

10. The reporting of the Account was false.  The Plaintiff never signed an application for credit from FIA Card Services f/d/b/a Bank of America (MBNA) or used, knew about or was otherwise legally responsible for the Account.

11. Defendant received, but ignored the Plaintiff's dispute and did refuse to delete the inaccurate information regarding the account from the Plaintiff's credit file.

12. Equifax uses an automated process to receive and handle a consumer's FCRA disputes.  When a consumer writes to make a dispute, a third party vendor opens the mail, scans the dispute and sends an electronic copy to an outsource vendor in the Philippines.  There, the vendor company - paid less than $.50 per dispute letter received (inclusive of overhead, etc.) – has a single task of reading the dispute and selecting one of less than a dozen frequently used dispute codes to "describe" the dispute.  For example, in this instance Equifax likely used the "001" code, which outputs to MBNA as "Consumer states not his/hers."

13. This code is then electronically delivered to MBNA through Equifax's "e-Oscar" system.  This is an electronic platform used by Equifax to forward a dispute code and receive one of four multiple choice response codes without further human intervention.  When a creditor such as MBNA responds, no human being at Equifax or even at its vendor will review or act upon the response.  Instead, Equifax reports exactly what its customer FIA Card Services f/d/b/a Bank of America (MBNA) instructs.

14. Equifax did not forward the Plaintiff's dispute letter to FIA Card Services f/d/b/a Bank of America (MBNA).

15. Equifax received Plaintiff's dispute, but entirely failed to conduct the reinvestigations required by law. Instead, it merely "parroted" the information dictated to it by MBNA and verified the account with the balance on July 24, 2008.

16. FIA Card Services f/d/b/a Bank of America (MBNA) has a history of ignoring consumer disputes and refusing to make corrections to accounts and credit reporting even though it did not have documents and records to support its reporting. In fact, it has been the target of substantial judicial criticism for its accounting and reporting practices.

17. In 2004, the United States Court of Appeals for the Fourth Circuit issued a reported decision affirming a District Court decision in which a jury concluded that MBNA's investigation procedures had violated the FCRA. That decision is reported as: *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004). Equifax was not a party to this original case but upon information and belief received and reviewed a copy of the Fourth Circuit decision in 2004.

18. On March 9, 2006, the United States District Court for Middle District of North Carolina issued a decision denying MBNA's motion asking the Court to find that's its investigation procedures did not violate the

FCRA. That decision is styled as and may be found at: *Johnson v. MBNA America Bank, N.A.*, 2006 WL 618077 (M.D.N.C. 2006).

19. In this North Carolina *Johnson* decision, the Court stated:

> Moreover, MBNA has not produced any records to support its assertion that Plaintiff is a joint obligor on the account, such as the original application, Plaintiff's signature for purchases made with the card, her involvement with or use of the cash withdrawn on the account, or payments on the account made by Plaintiff. Instead, MBNA relies on computerized notations that are inconclusive because (a) they are MBNA's internal records (or worse, records kept by its predecessor bank), (b) they are encoded in such a way as to make them difficult to decipher (at least to anyone not familiar with MBNA's system), (c) they go back only as far as 2002, and (d) they may or may not support MBNA's position. (MBNA's Mem., Ex. A.) The court is not aware of controlling authority on the question of what specific documentation is required in order to establish joint liability on credit card debt. Cases considering the question in the context of creditors' claims in bankruptcy proceedings are instructive. Although courts disagree about the specificity of proof required to file a credit card claim in bankruptcy, many hold that credit card debt is based on a "writing," that the relevant writing is the original credit agreement and/or records of the transactions performed with the credit card, and that those writings must be submitted in order to prove the claim. *See*, e.g., *In re Burkett*, 329 B.R. 820, 827 (Bankr.S.D.Ohio 2005) (when a credit card debt is disputed, some proof of liability is required); *In re Shank*, 315 B.R. 799, 808-10 (Bankr.N.D.Ga.2004) ("The fact that a party's business practices make it difficult to produce evidence to prove its case does not permit courts to ignore evidentiary rules in deciding a disputed matter."). It is axiomatic that a bank must have more than a person's name on the account statement to establish liability. The court cannot accept MBNA's assertion that Section 226.25 absolves it of an obligation to produce any proof of Plaintiff's liability on the account. *Accord Linda Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 432 (4th Cir.2004) ("jury could reasonably conclude that if ... MBNA no longer had the application, they could have at least informed the credit reporting agencies that MBNA could

not conclusively verify that Johnson was a co-obligor"); *In re Shank*, 315 B.R. at 810.

20. Upon information and belief, Equifax reviewed a copy of this decision in 2006.

21. Equifax has been sued numerous times since the Fourth Circuit's decision in *Johnson* and before Plaintiff's dispute in cases alleging that it reported information from MBNA that was inaccurate.

22. Prior to Plaintiff's dispute, Equifax had actual knowledge that it was an unreasonable procedure and violated the FCRA for it to rely on or 'parrot' its furnisher instead of conducting its own independent discretionary investigation.

23. On August 29, 2005, the United States District Court for Southern District of Georgia issued a decision denying TransUnion's motion asking the Court to find that's a CRA's investigation procedures such as Trans Union's did not violate the FCRA.  That decision is styled as and may be found at: *Sampson v. TransUnion Information Services, LLC,* 2005 WL 2095092 (S.D.Ga. 2005).   Upon information and belief, Equifax was aware of and reviewed that decision.

24. In the Georgia decision, the Court said:

> To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. The "grave responsibility" imposed by the FCRA

reinvestigation requirement "must consist of something more than merely parroting information received from other sources."

25. Equifax's investigation of the Plaintiff's disputes was limited solely to its sending and receipt of the Automated Dispute Verification forms from MBNA.

26. After receiving Plaintiff's notice of the inaccuracy and within the two years preceding the filing of this action, Equifax prepared and published to third parties inaccurate consumer reports about Plaintiff that contained the Account.

27. As a direct and proximate result of Defendant's wrongdoings, Plaintiff has and will suffer actual damages including damage to her credit worthiness, emotional distress, financial loss, and other types of damage as will be presented to the jury.

### COUNT ONE
### VIOLATION OF FAIR CREDIT
### REPORTING ACT §15 U.S.C. 1681e(b)

28. The Plaintiff realleges and incorporates paragraphs 1 through 34 above as if fully set out herein.

29. Defendant Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

30. As a result of the conduct, actions and inactions of Defendant the Plaintiff suffered actual damages.

31. Defendant's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

32. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C.  §1681n and §1681o.

## COUNT TWO
## VIOLATION OF FAIR CREDIT
## REPORTING ACT §15 U.S.C. 1681i(a)(1)

33. Plaintiff realleges and incorporates paragraphs 1 through 39 above as if fully set out herein.

34. Defendant Equifax violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit file.

35. As a result of the conduct, actions and inactions of Defendant the Plaintiff suffered actual damages.

36. Defendant's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

37. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
## VIOLATION OF FAIR CREDIT
## REPORTING ACT§15 U.S.C. 1681i(a)(2)

38. Plaintiff realleges and incorporates paragraphs 1 through 44 above as if fully set out herein.

39. Defendant Equifax violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide notification of the Plaintiff's disputes to MBNA and by failing to include all relevant information regarding the Plaintiff's disputes.

40. As a result of the conduct, actions and inactions of Defendant the Plaintiff suffered actual damages.

41. Defendant's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

42. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT FOUR
## VIOLATION OF FAIR CREDIT REPORTING ACT§15 U.S.C. 1681i(a)(4)

43. Plaintiff realleges and incorporates paragraphs 1 through 49 above as if fully set out herein.

44. Defendant Equifax violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider <u>all</u> relevant information submitted by Plaintiff.

45. As a result of the conduct, actions and inactions of Defendant the Plaintiff suffered actual damages.

46. Defendant's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant

was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

47. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT FIVE
## VIOLATION OF FAIR CREDIT
## REPORTING ACT §15 U.S.C. 1681i(a)(5)(A)

48. Plaintiff realleges and incorporates paragraphs 1 through 54 above as if fully set out herein.

49. Defendant Equifax violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate item of information from Plaintiff's credit file or modify the item of information upon an accurate reinvestigation.

50. As a result of the conduct, actions and inactions of Defendant the Plaintiff suffered actual damages.

51. Defendant's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

52. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT SIX
## VIOLATION OF FAIR CREDIT REPORTING ACT §15 U.S.C. 1681i(a)(5)(c)

53. Plaintiff realleges and incorporates paragraphs 1 through 59 above as if fully set out herein.

54. Defendant Equifax violated 15 U.S.C. §1681i(a)(5)(C) on multiple occasions by failing to maintain procedures designed to prevent the reappearance of deleted inaccurate information in Plaintiff's credit file.

55. As a result of the conduct, actions and inactions of Defendant the Plaintiff suffered actual damages.

56. Defendant's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

57. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT SEVEN
## DEFAMATION

58. Plaintiff realleges and incorporates paragraphs 1 through 64 above as if fully set out herein.

59. Since at least September 2006, Equifax unlawfully published the MBNA reporting in the Plaintiff's credit reports to third party users – asserting (a.) that the Plaintiff had applied for, used and was responsible to pay the Account, and (b.) that the Plaintiff had failed to pay a credit card account owed to Defendants and done so such that it was charged off.  (the "Defamations").

60. The Defamations were made with legal malice and a willful intent to injure the Plaintiff by placing derogatory credit information on her credit reports merely because Equifax's customer, MBNA, asked that it do so.  MBNA reported the account as a means to pressure the Plaintiff and other similarly situated consumers to pay its accounts, even if not owed.   After June 2008, when the Plaintiff had informed Equifax of MBNA's inaccuracy, Defendant certainly did not have any reasonable basis (indeed Equifax never had any reasonable basis) to

believe that the Plaintiff was responsible for the Account reported in the MBNA reporting. It thereafter reported the Account as having been "verified" even though it had actual knowledge that MBNA had never verified the account in the manner required by the FCRA.

61. As a result of this conduct, action and inaction of Defendant, the Plaintiff suffered actual damages.

62. The Defamations by the Defendant were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against each in an amount to be determined by the Court.

WHEREFORE, Your Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for her attorneys fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts (ASB-5819-T82J)**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, P.C.
700 29th Street South, Suite 201
Birmingham, AL  35233
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring ASB-1074-N72M**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
700 29th Street South, Suite 201
Birmingham, AL  35233
(205) 879-2447
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PRO HAC VICE PENDING**
Consumer Litigation Associates, P.C.
Leonard A. Bennett, Esq.
12515 Warwick Blvd, Suite 100
Newport News, VA 23606
(757) 930-3660
(757) 930-3662 *facsimile*
lenbennett@clalegal.com

## PLAINTIFF'S DEMAND A TRIAL BY JURY

/s/ John G. Watts
**John G. Watts**
**Attorney for Plaintiff**

**Serve Defendant via certified mail at the following address:**

Equifax Information Services, LLC
c/o CSC Lawyers Incorporating Service, Inc.
150 S. Perry Street
Montgomery, Alabama 36104